## Knauss *versus* Shiffert.

1. In some cases where a special contract has been partially executed and then rescinded, the law raises a promise that he who has enjoyed benefits under it, will pay for what he has enjoyed.

2. In such cases it requires but little evidence to show that such was the positive understanding of the parties.

3. The plaintiff sold a horse to the defendant, who retained it for some days and returned it. The plaintiff inquired of the defendant's messenger who brought the horse back, whether the defendant had sent a note or money; he replied the defendant had not, but that the defendant "would fix it all right." *Held*, these declarations were properly receivable in evidence, and that from them and corroborative facts, the jury might find a promise of defendant to pay for the use of the horse.

March 16th 1868.   Before STRONG, READ, AGNEW and SHARSWOOD, JJ.   THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Lehigh county*: To July Term 1867, No. 30.

This case was commenced before a justice of the peace, by John Shiffert against Franklin Knauss. On appeal to the Court of Common Pleas the plaintiff declared in assumpsit in the common counts.

In August 1862 the defendant bought a horse from the plaintiff for $175, for which he gave his note payable in three months. In December the defendant being at the house of the plaintiff, and expressing some dissatisfaction with the horse, the plaintiff said he would sell him another at a less price, "and take the first one back at the same figure he was sold for." The defendant said he would take the second horse at $150, if the plaintiff would take his note at 90 days for the amount. To this the plaintiff assented: the first horse was returned, the $175 note given up; the other horse taken, and a note for $150 given to the plaintiff. A week or two afterwards the defendant sent the second horse back. The messenger, his brother William Knauss, who brought him back, told the plaintiff that he did not suit; the plaintiff received the horse. This action was brought to recover for the use of the horses during the time the defendant had them.

John Heist testified: "Shiffert asked the boy if he brought money along; the boy said he did not; he asked him if he had a note; he said no, but his brother would come and fix it all right."

John F. M. Shiffert testified that on the same occasion, which was at the plaintiff's dinner-table, "I heard William say that his brother Frank would be out, the latter part of the week, and would make it all right."

William Knauss testified: The plaintiff "asked me whether Frank did not tell me to bring the note along; I said yes; Mr. Shiffert said he couldn't give Frank the note, unless he had a

[Knauss *v.* Shiffert.]

note from him; he did not say for what; Shiffert asked me if my brother did not give me something to give to him; I answered no, and did not say Frank would be over to see him; I took dinner at Mr. Shiffert's."

The defendant asked the court to rule out the testimony, which the court declined to do and sealed a bill of exceptions.

There was evidence that the defendant had the horses for 112 days.

The defendant asked the court to charge the jury:

4. There is no evidence in the cause of an express promise to pay for the services of the horses.

5. The jury are to disregard the declarations of William Knauss at dinner-table, spoken of in the testimony of John Heist and John Shiffert, as evidence of such contract, such declaration having been received under objection of defendant, and defendant having subsequently asked to have them ruled out of the cause.

6. Under the evidence, defendant is entitled to a verdict.

In reply to the points the court (Maynard, P. J.) said:—

"To the fourth point we answer: It is a question of fact for the jury to ascertain from the evidence, what the real contracts were between the parties at the time the horse was returned by defendant, and the note was retained by the plaintiff. If it was then understood between the parties, that the note should be retained to indemnify the plaintiff from loss for the services of the horses or either of them, the plaintiff would be entitled to recover, although there might have been no express promise in terms to pay for the services of the horse.

"To the fifth point we answer: It is for the jury to determine whether these declarations at the dinner-table were part of the act of redelivering the horse or not. If the jury find they are of the *res gestœ*, they are evidence; if not, not.

"To the sixth point, the court decline to give an affirmative answer, but leave the facts to the jury, as before stated."

The verdict was for the plaintiff for $56.

The defendant removed the record to the Supreme Court, and assigned for error the refusal to rule out the testimony of Heist and the answers to the points.

*J. H. Oliver*, for plaintiff in error.—There was no evidence of an express contract to pay for the use of the horses, and to leave the question to the jury was error: Werkheiser *v.* Werkheiser, 6 W. & S. 188; Muirhead *v.* Fitzpatrick, 5 Id. 508; Wilson *v.* Davis, Id. 523; Evans *v.* Mengel, 1 Barr 82: Gilchrist *v.* Rogers, 6 W. & S. 488; Urket *v.* Coryell, 5 Id. 84; Miller *v.* Cresson, Id. 301; Switland *v.* Holgate, 8 Watts 385; Harrisburg Bank *v.* Forster, Id. 310; Hersheaur *v.* Hocker, 9 Id. 455; Snyder *v.* Wilt, 3 Harris 59.

[Knauss *v.* Shiffert.]

*S. A. Bridges*, for defendant in error.—The jury were the judges of what occurred between the parties: Bunting *v.* Young, 5 W. & S. 188.

On the rescission of a contract the law implies that the party having had any benefit shall pay compensation for what he has had: Addison on Contracts 54; Wall's Appeal, 2 Wright 464. The Supreme Court will not reverse on a question not fairly raised: Torrance *v.* Torrance, 3 P. F. Smith 505. Facts and their inferences are for the jury: Myers *v.* Hart, 10 Watts 104.

He also commented on the cases cited by the plaintiff in error.

The opinion of the court was delivered, March 23d 1868, by

STRONG, J.—The defendant purchased a horse from the plaintiff in the month of August 1862, for the price of $175, giving his note for that entire sum, payable in three months, and took the horse into his possession. In the month of December following, he returned the subject of his purchase, and in lieu thereof purchased another horse from the plaintiff for $150, giving his note for the price, payable in ninety days. This second horse he sent back to the plaintiff a few days afterwards, and the plaintiff received him, though he did not surrender the note. On the contrary he declined to give it up, until the defendant came to see him. The evidence shows that he asked the messenger by whom the horse was sent, whether the defendant had not sent a note or money, to which the reply was "no, but that the defendant would come and fix it all right." It may be assumed that both the contracts of sale were rescinded. But they were not rescinded until after they had been partially executed. The defendant enjoyed the use of the horses for a period of one hundred and twelve days. In the absence of any proof that the understanding of the parties was different, there is in equity and fairness a plain obligation on the defendant, not to pay the purchase-money for the horses, but to pay for what he enjoyed, under the contracts of purchase. In some cases, when a special contract has been partially executed and then rescinded, the law raises a promise that he who has enjoyed benefits under it, will pay for what he has enjoyed. In such a case it requires but little evidence to show that such was the positive understanding of the parties. That in this case the plaintiff below understood he was to receive compensation for what the defendant had enjoyed, that is for the services of the horses, is evident from what he said when the second horse was returned. He refused to give up the note. He asked whether the defendant had sent money with the horse, and, when told that he had not, he asked whether the defendant had sent a note. He was answered in the negative, but was assured that the defendant would come and fix it all right. Fix what all right? Clearly nothing was to be fixed, except compensation for the services of the horses, for the sales were rescinded by mutual consent. If

[Knauss *v.* Shiffert.]

this was evidence, it certainly did tend to show an express engagement to pay what was reasonable. It is altogether probable that without such a promise, the plaintiff would not have consented to receive the horse and give up the contract of sale. That the declarations of the messenger were properly received and submitted to the jury in the cautious manner in which the court submitted them, hardly admits of a doubt. He was the agent of the defendant to return the horse and thus effect a rescission of the sale. The court submitted to the jury to find whether the declarations were part of the act of redelivering the horse, with instructions that if they were of the *res gestœ*, they were evidence, and if they were not of the *res gestœ*, they were not evidence. As the testimony is exhibited to us, we think the jury might well have found that what the messenger said, and the act of returning the horse, were both parts of one transaction. There was then no error either in refusing to rule out the testimony of John Heist or John T. M. Shiffert, or in the answers given to the defendant's points. It certainly would have been error had the court instructed the jury that he was entitled to a verdict. The proof of an express promise to pay for the use of the horses may not have been very positive, but such as it was, it was for the jury rather than the court to determine its effect. 　　　　Judgment affirmed.